1

2

3

4

5

6            IN THE UNITED STATES DISTRICT COURT

7

8            FOR THE NORTHERN DISTRICT OF CALIFORNIA

LAVON JONES, JR.,

9

        Plaintiff,

10                                                  No. C 03-05531 JSW

    v.

11

BAYER HEALTHCARE LLC,

12                                                  **ORDER GRANTING MOTION**
                                                    **FOR SUMMARY JUDGMENT**
        Defendant.

13  _____/

14          Now before the Court is the motion for summary judgment filed by Defendant Bayer

15  Healthcare LLC ("Bayer").  Having carefully considered the parties' arguments, the relevant

16  legal authority, and having had the benefit of oral argument, the Court hereby GRANTS

17  Defendant's motion for summary judgment.

18                              **BACKGROUND**

19          Plaintiff brings suit against Bayer alleging race discrimination under Title VII of the

20  Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e-2(a)(1)(2) (claim one); retaliation in

21  violation of 42 U.S.C. §§ 2000e-3(a) (claim two); race discrimination – termination – in

22  violation of 42 U.S.C. § 1981 (claim three); retaliation – race – in violation of 42 U.S.C. § 1981

23  (claim four); race discrimination – promotion – in violation of 42 U.S.C. § 1981 (claim five);

24  race discrimination – termination - in violation of California Government Code § 12940(a)

25  (claim six); retaliation in violation of California Government Code § 12940(h)(1) (claim seven);

26  and violation of public policy in violation of Article I, Section 8 of the California Constitution

27  and California Government Code §§ 12920 & 12940(a) (claim eight).

28

**United States District Court**
For the Northern District of California

United States District Court

For the Northern District of California

1    Plaintiff was employed by Bayer in its Berkeley facility for approximately five years as

2    a general worker and mechanic.  The main pharmaceutical product manufactured at Bayer's

3    Berkeley facility is Kogenate FS, a clotting agent principally used by hemophiliacs to help clot

4    their blood.  (*See* Declaration of Peter Kramer at ¶ 3.)  Bayer must follow rigorous internal

5    operating procedures as well as follow the mandates of Federal Regulations and subject itself to

6    regulatory audits.  (*See id.* at ¶ 5.)

7    On his application materials, Plaintiff misrepresented the name of the high school he

8    attended and misrepresented that he spent a year in college.  (Declaration of Jerome

9    Schreibstein "Schreibstein Decl.") at Ex. B at JON0525; Declaration of Lavon Jones ("Jones

10    Decl.") at ¶ 3.)  Bayer's employment application, signed and acknowledged by Plaintiff,

11    contained a provision that regardless of when a misrepresentation in the application materials

12    was discovered, it would be grounds for disciplinary action, up to and including termination.

13    (Schreibstein Decl., Ex. B at JON0441.)  As a heavily regulated manufacturer of pharmaceutical

14    products, Bayer has a zero tolerance policy for document falsification applicable in the

15    personnel context.  It is settled policy at Bayer that misrepresentation in the employment

16    application process is sufficient grounds for termination.  (Declaration of Sherri O'Driscoll at ¶

17    3; Declaration of Joseph M. Gallagher at ¶ 3.)

18    Plaintiff was employed by Bayer as a General Worker starting in February 1997 and

19    continued in various positions, as a janitor and an Equipment Sterilizer Washer.  (*See*

20    Shreibstein Decl., Ex. A at 29, 46-51.)  In September 2000, without any previous work

21    experience in the field, Plaintiff completed a course on climate control and refrigeration which

22    was the only refrigeration training he had completed.  (*See id.* at 55-59.)  Shortly after receiving

23    the certificate, Plaintiff applied for a position as a C-level mechanic in Bayer's HVAC (heating,

24    ventilation and air conditioning systems) department.  (*See id.* at 82-83.)  After the position was

25    offered to a Caucasian applicant, Plaintiff contested the selection by complaining to the Union

26    and filing a grievance with Bayer's Human Resources Department.  (*See* Jones Decl. at ¶ 11.)

27    Due to his Union seniority and his related technical training, Plaintiff was given the position

28

2

United States District Court
For the Northern District of California

1    beginning February 2001.  (*See* Schreibstein Decl., Ex. A at 119; Declaration of Ron Roberts

2    ("Roberts Decl.") at ¶ 4.)

3        Plaintiff contends that during his tenure in the HVAC Department, he was treated

4    differently from other, non-African American employees because of a delay in ordering his

5    uniform, the failure timely to provide him with tools and failing to give him a two-way radio.

6    (*See* Jones Decl. at ¶ 12.)  Plaintiff also contends that he was assigned to work with someone

7    who was moody and hard to work with and he was therefore unable to learn more on the job.

8    (*See id.* at ¶ 13.)  During his probationary period, Plaintiff's supervisor reported that several

9    fellow mechanics had complained about Plaintiff's performance, his lack of concentration on

10   instructions, excessive use of cell phones and beepers for personal use, and lengthy

11   disappearances from the work site.  The supervisor suggested classes to help with Plaintiff's

12   interpersonal skills, but Plaintiff insisted upon a group meeting during which he felt criticized

13   by his fellow employees.  (*See* Roberts Decl. at ¶¶ 9-10; Schreibstein Decl., Ex. A at 122-30.)

14   Plaintiff felt that the criticisms of his performance were the product of discriminatory motive,

15   but proffers no evidence to support his subjective perception.  (*See* Schreibstein Decl., Ex. A at

16   128-130.)

17       After Plaintiff's promotion to B level mechanic, complaints about his work continued.

18   Such complaints included a confrontational altercation with another mechanic, repeated

19   complaints about Plaintiff's poor attitude and work performance from co-workers, Plaintiff's

20   failure to follow strict company policy on equipment release and lockout/tagout procedures, his

21   missing days of work and failing to show up for a particular, time-sensitive work assignment.

22   (*See, e.g.,* Declaration of Richard Smith ("Smith Decl.") at ¶¶ 6-8; Schreibstein Decl., Ex. A at

23   165-68.)

24       On June 24, 2002, Plaintiff filed a complaint before the United States Equal Opportunity

25   Commission ("EEOC") alleging discrimination on account of his race.  (*See* Schreibstein Decl.,

26   Ex. C at JON0060.)  In his complaint, Plaintiff alleged that he was denied access to tools,

27   training and the internet.  (*See id.*)  On December 16, 2002, the EEOC dismissed the charges

28   based on lack of evidence.  (*See id.*, Ex. D at JON0057.)  On the same day, Plaintiff submitted

**United States District Court**
For the Northern District of California

1  additional materials before the EEOC, but as the deadline for submission had passed, the EEOC

2  treated the submission as a request for reconsideration, which was denied as insufficient in

3  January 2003.  (*See id.* at Ex. A at 389-390, 392-93.)

4        When, in January 2003, Plaintiff inquired about possible promotion, his supervisor

5  evaluated Plaintiff's performance on the changing of a fan unit filter.  His supervisor

6  determined that Plaintiff had completed the paperwork indicating the filters had been changed,

7  but could not account for the fact that, upon visual inspection, it appeared that there remained

8  dirty filters in the unit.  (*See* Schreibstein Decl., Ex. A at 203-209, 223-24, Ex. B at JON1715-

9  16, JON1717; Smith Decl. at ¶¶ 14-15.)

10       Based on Plaintiff's past disciplinary problems, including interpersonal issues and work

11 performance, his abandonment of the job when called upon for special assignment, and the

12 possible serious document violation relative to the filter maintenance, Plaintiff was terminated

13 from employment effective January 27, 2003.  (Smith Decl. at ¶ 15, Ex. E at JON0625-26.)

14 Although Plaintiff maintains that the unfulfilled promotion request and termination were

15 racially motivated, Plaintiff was unable to identify at deposition any statement, comments, or

16 particular actions that would indicate racial animus.  (Schreibstein Decl., Ex. A at 128-130,

17 220-221, 228-235.)  Further, Plaintiff was unable to proffer any evidence of retaliatory motive

18 on Bayer's part.  (*See id.* at 358-376.)

19       The Court will address the additional specific facts as required in the analysis.

20                                **ANALYSIS**

21 **A.       Standards Applicable to Motions for Summary Judgment.**

22        A principal purpose of the summary judgment procedure is to identify and dispose of

23 factually unsupported claims.  *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323-24 (1986).

24 Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and

25 admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

26 any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R.

27 Civ. P. 56(c).  "In considering a motion for summary judgment, the court may not weigh the

28 evidence or make credibility determinations, and is required to draw all inferences in a light

4

United States District Court

For the Northern District of California

1    most favorable to the non-moving party." *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir.

2    1997).

3          The party moving for summary judgment bears the initial burden of identifying those

4    portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine

5    issue of material fact. *Celotex*, 477 U.S. at 323. An issue of fact is "genuine" only if there is

6    sufficient evidence for a reasonable fact finder to find for the non-moving party. *Anderson v.*

7    *Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). A fact is "material" if it may affect the

8    outcome of the case. *Id.* at 248. If the party moving for summary judgment does not have the

9    ultimate burden of persuasion at trial, that party must produce evidence which either negates an

10   essential element of the non-moving party's claims or that party must show that the non-moving

11   party does not have enough evidence of an essential element to carry its ultimate burden of

12   persuasion at trial. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir.

13   2000). Once the moving party meets its initial burden, the non-moving party must go beyond

14   the pleadings and, by its own evidence, "set forth specific facts showing that there is a genuine

15   issue for trial." Fed. R. Civ. P. 56(e).

16         In order to make this showing, the non-moving party must "identify with reasonable

17   particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275,

18   1279 (9th Cir. 1996). In addition, the party seeking to establish a genuine issue of material fact

19   must take care adequately to point a court to the evidence precluding summary judgment

20   because a court is "'not required to comb the record to find some reason to deny a motion for

21   summary judgment.'" *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1029 (9th

22   Cir. 2001) (quoting *Forsberg v. Pacific Northwest Bell Telephone Co.*, 840 F.2d 1409, 1418

23   (9th Cir. 1988)). If the non-moving party fails to point to evidence precluding summary

24   judgment, the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323.

25   **B.    Plaintiff's Claims for Race Discrimination Do Not Survive Summary Judgment.**

26         Plaintiff brings his first, third, fifth and sixth claims for race discrimination and contends

27   that Bayer failed to promote him and terminated him based on his membership in a protected

28   class. In order to make a claim for discrimination, Plaintiff must establish that he suffered an

**United States District Court**
For the Northern District of California

1    adverse employment action that was motivated by intentional discriminatory animus. *See, e.g.,*

2    *Guz v. Bechtel National, Inc*., 24 Cal.4th 317, 353-58 (2000). The proper legal framework for

3    determining whether Plaintiff's claim should survive summary judgment is the familiar burden-

4    shifting scheme set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

5         First, Plaintiff must establish a prima facie case of discrimination. *See id.*; *Guz,* 24 Cal.

6    4th at 351-54. Whether Plaintiff can meet his burden to establish a prima facie case of

7    discrimination is a matter of law to be determined by the court. *Caldwell v. Paramount Unified*

8    *School District*, 41 Cal. App. 4th 189, 201 (1995). If Plaintiff establishes a prima facie case, the

9    burden then shifts to Defendant to articulate a legitimate, nondiscriminatory reason for its

10   employment decision. Then, in order to prevail, Plaintiff must demonstrate that the employer's

11   alleged reason for the adverse employment decision was a pretext for another, discriminatory

12   motive. *See Guz*, 24 Cal. 4th at 351-54; *see also Villiarimo v. Aloha Island Air, Inc*., 281 F.3d

13   1054, 1061 (9th Cir. 2002). Plaintiff may establish a prima facie case of discrimination by

14   demonstrating that (1) he belongs to a statutorily protected class; (2) he applied for and was

15   qualified for an available position; (3) he suffered an adverse employment decision; and (4)

16   similarly situated individuals not in the protected class were treated more favorably. *St. Mary's*

17   *Honor Ctr. v. Hicks,* 509 U.S. 502, 506 (1993). The only significant difference in the FEHA

18   analysis is that in order to establish a prima facie case, Plaintiff must, in addition to the first

19   three elements, demonstrate some other circumstances that suggests discriminatory motive.

20   *See, e.g., Guz*, 24 Cal.4th at 355.

21        If Plaintiff succeeds in establishing a prima facie case, the burden of production then

22   shifts to Bayer to articulate a legitimate, nondiscriminatory reason for terminating Plaintiff's

23   employment. *See McDonnell Douglas*, 411 U.S. at 802. If Bayer does so, Plaintiff must

24   demonstrate that Bayer's articulated reason is a pretext for unlawful discrimination by "'either

25   directly persuading the court that a discriminatory reason more likely motivated the employer or

26   indirectly by showing that the employer's proffered explanation is unworthy of credence.'"

27   *Chuang v. Univ. of Cal. Davis*, 225 F.3d 1115, 1124 (9th Cir. 2000) (quoting *Texas Dep't of*

28   *Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981)). Plaintiff's evidence must be both specific

1   and substantial to overcome the legitimate reasons set forth by the employer.  *Aragon v.*

2   *Republic Silver State Disposal, Inc*., 292 F.3d 654, 659 (9th Cir. 2002).

3        **1.      Prima Facie Case.**

4        At summary judgment, the degree of proof necessary to establish a prima facie case is

5   "minimal and does not even need to rise to the level of a preponderance of the evidence."

6   *Lyons v. England,* 307 F.3d 1092, 1112 (9th Cir. 2002) (quoting *Wallis v. J.R. Simplot Co.,* 26

7   F.3d 885, 889 (9th Cir. 1994)).  Although the burden for establishing a prima facie case is an

8   easy one to satisfy, Plaintiff has failed to do so.  Although Plaintiff's race makes him a member

9   of a protected class and his failure to be promoted and termination qualify as adverse

10  employment actions,[1] he fails to satisfy the other two prongs of the test; that is, to demonstrate

11  that he was qualified for the position and that other, similarly situated individuals not in the

12  protected class were treated more favorably.

13       **a.      Plaintiff has failed to demonstrate that he was qualified for the position.**

14

15       There is simply no evidence in the record that Plaintiff was qualified for the position of

16  Level A mechanic.  Plaintiff's disciplinary record indicates that, due to his performance record

17  and disciplinary actions, he was not qualified for promotion.  In addition, the record

18  demonstrates that there were numerous times when Plaintiff's performance on the job was

19  unsatisfactory.  The record is replete with instances of complaints about Plaintiff's work from

20  fellow employees and supervisors.  (*See, e.g.,* Roberts Decl. at ¶¶ 9-10; Schreibstein Decl., Ex.

21  A at 122-30.)  There were complaints about a confrontational altercation with another

22  mechanic, repeated complaints about Plaintiff's poor attitude and work performance from co-

23  workers, Plaintiff's failure to follow strict company policy on equipment release and

24  lockout/tagout procedures, his missing days of work and failing to show up for a particular,

25  time-sensitive work assignment.  (*See, e.g.,*Smith Decl. at ¶¶ 6-8; Schreibstein Decl., Ex. A at

26  165-68.)  In addition, just prior to his termination, Plaintiff's supervisor determined that

27

28       [1] As Plaintiff conceded at oral argument on this motion, because Plaintiff was
    terminated at the time he applied for a promotion, the claims for discrimination in failing to
    promote him collapse under the same rubric as his termination claims.

**United States District Court**
For the Northern District of California

1   Plaintiff had completed the paperwork indicating some filters had been changed, but could not

2   account for the fact that, upon visual inspection, it appeared that the there remained dirty filters

3   in the unit.  (*See* Schreibstein Decl., Ex. A at 203-209, 223-24, Ex. B at JON1715-16,

4   JON1717; Smith Decl. at ¶¶ 14-15.)[2]

5        Based on this evidence, the Court finds that Plaintiff has failed to demonstrate that there

6   is a genuine dispute of material fact regarding his qualifications.  Therefore, the Court finds that

7   Plaintiff has failed to establish a prima facie case of discrimination based on demonstrating

8   Plaintiff was qualified for the position.  *See Hicks,* 509 U.S. at 506.

9                **b.**     **Plaintiff has failed to demonstrate that other, similarly situated individuals were treated more favorably.**

10

11       In addition, Plaintiff has failed to raise a dispute of fact regarding whether other

12  employees outside of his protected class were treated more favorably.  In this regard, Plaintiff

13  contends that during his tenure in the HVAC Department, he was treated differently from other,

14  non-African American employees because of a delay in ordering his uniform, the failure timely

15  to provide him with tools and failing to give him a two-way radio.  (*See* Jones Decl. at ¶ 12.)

16  Plaintiff also contends that he was assigned to work with someone who was moody and hard to

17  work with and he was therefore unable to learn more on the job.  (*See id.* at ¶ 13.)  Also, in his

18  complaint before the EEOC, Plaintiff contended that he was denied access to tools, training and

19  the internet.  (*See* Schreibstein Decl., Ex. C at JON0060.)

20       However, there is no evidence in the record that the delay in ordering a uniform or the

21  alleged delay in providing tools or failure to provide a two-way radio or access to the internet

22  impeded Plaintiff's performance on the job.  In fact, Plaintiff so testified.  (*See* Schreibstein

23        [2] To the extent that Plaintiff attempts to rehabilitate his former testimony by

24  submitting a declaration in connection with opposing the motion for summary judgment in which he unequivocally attests that he changed the filters (Jones Decl. at ¶ 26), such

25  testimony is self-serving and contradicts his former sworn testimony in which he stated it was highly unlikely that he would not have changed the filters (Schreibstein Decl., Ex. A at 224).  A party cannot create a triable issue of fact, and thus survive summary judgment, by

26  contradicting his own deposition testimony with a later declaration.  *Disc Golf Ass'n v. Champion Discs,* 158 F.3d 1002, 1008 (9th Cir. 1998).  Thus, Defendant's objections to

27  those portions of Plaintiff's declaration that contradict his previous sworn testimony is sustained.  Regardless of the filters incident, however, there is ample other evidence in the

28  record indicating that Plaintiff was not performing within the qualifications required of his job.

*United States District Court*
For the Northern District of California

United States District Court

For the Northern District of California

1    Decl., Ex. A at 268-69, 281.)  Further, during his testimony, Plaintiff was unable to identify

2    anyone else, similarly situated, who was treated more favorably with respect to the provision of

3    a uniform, training or tools, discipline, or the level at which others were hired and promoted in

4    the HVAC department.  (*See id.* at 237-38, 240-43, 244-48, 271-75; 195; 304-311, 313, 317.)

5         Because there is no evidence that other, similarly situated individuals were treated more

6    favorably based upon their race, the Court finds that Plaintiff has not met his burden to

7    demonstrate the existence of a prima facie case of race discrimination based on this factor.

8    Therefore, summary judgment on Plaintiff's claim is properly granted.

9         However, even assuming *arguendo* that Plaintiff had established a prima facie case of

10   race discrimination, summary judgment is still warranted because Bayer has asserted a

11   legitimate, nondiscriminatory reason for Plaintiff's termination, and Plaintiff has failed to

12   demonstrate the reason is merely pretext.

13        **2.    Bayer Has Demonstrated Legitimate Business Reasons for Terminating Plaintiff.**

14

15        Even if Plaintiff could successfully establish a prima facie case of race discrimination,

16   the undisputed facts demonstrate that Bayer had legitimate business reasons for failing to

17   promote him and instead terminating him.  First, Plaintiff has proffered no evidence to

18   demonstrate that he was qualified for promotion to level A mechanic.  Second, Plaintiff's record

19   of disciplinary problems is sufficient to establish a legitimate business reason for the

20   determination that he should be terminated.  The articulated reasons for Bayer's failure to

21   advance and instead to terminate Plaintiff were based on the application of objective, lawful

22   criteria and were not related to Plaintiff's race.

23        **3.    Plaintiff Fails to Raise an Issue of Disputed Fact Regarding Pretext.**

24        Because Defendant presents evidence demonstrating a legitimate nondiscriminatory

25   reason for the failure to promote and termination, Plaintiff bears the burden of demonstrating

26   that Defendant's articulated reason is pretextual.  Plaintiff may do so "either [1] directly by

27   persuading the court that a discriminatory reason more likely motivated the employer or [2]

28   indirectly by showing that the employer's proffered explanation is unworthy of credence."

*Merrick v. Farmers Ins. Group,* 892 F.2d 1434, 1437 (9th Cir. 1990) (internal cites and quotations omitted).

The Court has already determined that the undisputed evidence demonstrates that Plaintiff failed to perform his duties in compliance with Bayer's expectations and explicit standard operating procedures.  Plaintiff fails to refute Bayer's legitimate non-discriminatory reasons for termination and himself admits numerous times that he has no direct evidence that a discriminatory reason motivated his employer.  (*See, e.g.*, Schreibstein Decl., Ex. A at 220-21, 229-235, 283-93.)[3]

Plaintiff also contends that he may infer race discrimination from the fact that he was the only African-American in the HVAC department.  The Court is not persuaded by Plaintiff's argument that the Court should infer racial animus because the group fails to constitute a statistical sample.  The Ninth Circuit has held that a sampling of such a small universe detracts from the value of statistical evidence.  *See Morita v. Southern California Permanente Medical Group*, 541 F.2d 217, 220 (9th Cir. 1976) ("statistical evidence derived from an extremely small universe ... has little predictive value and must be disregarded.") (citations and internal quotations omitted); *see also Sengupta v. Morrison-Knudsen Co.,* 804 F.2d 1072, 1076 (9th Cir. 1986) (finding that a department of 28 employees was too small for statistical analysis of race under Title VII); *but see Obrey v. Johnson*, 400 F.3d 691, 695 (9th Cir. 2005) (holding that considerations of small sample size may detract from the value of such evidence, but such statistical evidence may be probative).

Therefore, the Court finds that Plaintiff has failed to set forth any direct or indirect evidence to persuade the Court that a discriminatory reason more likely motivated the employer or any indirect evidence tending to demonstrate that the employer's proffered explanation is

---

[3]  Bayer's brief makes a passing reference to a comment that Plaintiff believed intimated race discrimination.  (*See* Motion at 3-4.)  First, the specific comment Plaintiff complains of regarding his failure to maintain eye contact does not indicate any racial animus.  However, even assuming there was some racial content to the comment, it constituted a mere stray remark.  *See Mondero v. Salt River Project*, 400 F.3d 1207, 1213 (9th Cir. 2005) (holding that stray remarks not acted upon or communicated to a decision maker are insufficient to establish pretext); *see also Merrick v. Farmers Ins. Group,* 892 F.2d 1434, 1438-39 (9th Cir. 1990) (same).

United States District Court

For the Northern District of California

unworthy of credence.  *See Merrick,* 892 F.2d at 1437.  Having failed to raise a disputed fact demonstrating that Bayer's articulated reason for termination is pretextual, either directly or indirectly, the Court grants summary judgment on Plaintiff's first, third, fifth and sixth claims for race discrimination.[4]

**C.      Plaintiff's Claims for Retaliation Do Not Survive Summary Judgment.**

        In his second and seventh causes of action, Plaintiff also makes claims for relief for retaliation.  Similar to elements of establishing discrimination, the elements of a retaliation claim "require that (1) the plaintiff establish a prima facie case of retaliation, (2) the defendant articulate a legitimate, nonretaliatory explanation for its acts, and (3) the plaintiff show that the defendant's proffered explanation is merely a pretext for the illegal [action]."  *Flait v. North American Watch Corp*., 3 Cal. App. 4th 467, 476 (1992).  In order to establish a prima facie case of retaliation, the plaintiff must show that (1) he engaged in a protected activity, (2) his employer subjected him to adverse employment action, and (3) there is a causal link between the protected activity and the employer's action.  *Id.; see also Akers v. County of San Diego*, 95 Cal. App. 4th 1441, 1453 (2002) (same).

        Plaintiff maintains that he engaged in protected activity when he filed an internal complaint and EEOC charges.  (*See* Schreibstein Decl., Ex. C at JON0060.)  Plaintiff's complaint was originally filed on June 24, 2002.  (*See id.*)  The EEOC initially dismissed the charges based on lack of evidence in December 2002.  (*See id.*, Ex. D at JON0057.)  After consideration of late-filed submissions interpreted as a request for reconsideration, the EEOC denied Plaintiff's request as insufficient in January 2003.  (*See id.* at Ex. A at 389-390, 392-93.)

        To the extent Plaintiff claims that his complaints and alleged protected activity ultimately caused his termination, the long passage of time between the alleged protected acts (the filing of the original EEOC complaint in June 2002) and the termination in January 2003

---

        [4] Plaintiff's ninth claim for violation of public policy in violation of Article I, Section 8 of the California Constitution fails.  To state a claim for termination in violation of public policy, an employee must allege (1) an employer-employee relationship; (2) termination of employment; (3) the termination was a violation of public policy; (4) the termination was the legal cause of the plaintiff's damages; and (5) damages.  *Tameny v. Atl. Richfield Co.,* 27 Cal. 3d 167, 172 (1980).  Because Plaintiff's claims of discrimination fail, there is no basis for alleging a violation of public policy.

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1   preclude a finding of causal nexus.  *See, e.g., Manatt v. Bank of America*, 339 F.3d 792, 802

2   (9th Cir. 2003) (holding that nine-month period of time between protected activity and alleged

3   retaliatory action was too long to create an inference of retaliation); *see also Clark County Sch.*

4   *Dist. v. Breeden,* 532 U.S. 268, 273 (2001) (per curiam) (noting that a court may not infer

5   causation from temporal proximity unless the time between an employer's knowledge of

6   protected activity and an adverse employment action is "very close" and citing cases for the

7   proposition that a three-month and four-month time lapse is insufficient to infer causation).

8   Therefore, Plaintiff fails to make out a prima facie case of retaliation.

9        However, even if Plaintiff were able to make out a prima facie case of retaliation, the

10   Court finds that Bayer has articulated a legitimate, nonretaliatory explanation for its acts, and

11   Plaintiff cannot show that Bayer's proffered explanation is merely a pretext for illegal action.

12   Bayer has articulated a legitimate basis for terminating Plaintiff due to his disciplinary and

13   performance record.  Plaintiff has failed to demonstrate that Bayer's proffered reason is mere

14   pretext for unlawful discriminatory or retaliatory motive for the same reasons he has failed to so

15   demonstrate for his claims of race discrimination and because he lacks even temporal proximity

16   to create an inference of retaliatory motive.  Therefore, the Court grants summary judgment on

17   Plaintiff's second and seventh claims for retaliation.

18   **D.     The After-Acquired Evidence Rule as Independent Basis for Summary Judgment.**

19        The after-acquired evidence rule serves as a complete or partial defense to an

20   employee's claim of wrongful discharge.  It comes into play when, after an employee's

21   termination, the employer learns of the employee's wrongdoing that would have resulted in the

22   employee's discharge in any event.  *Camp v. Jeffer, Mangels, Butler & Marmaro*, 35 Cal. App.

23   4th 520, 632 (1995).  To invoke this doctrine, the employer must establish that the wrongdoing

24   was of such severity that the employee in fact would have been terminated on those grounds

25   alone if the employer had known of it.  The employer must show that such a firing would have

26   occurred as a matter of settled company policy.  *Murillo v. Rite Stuff Foods, Inc*., 65 Cal. App.

27   4th 833, 845-46 (1998), citing *Waag v. Thomas Pontiac Buick, GMC, Inc*., 930 F. Supp. 393,

28   408 (D. Minn. 1996).

Bayer has submitted a declaration from the manager of Human Resources indicating that Plaintiff would have been fired according to settled policy had the company known that he had misrepresented his qualifications on his job application.  (*See* O'Driscoll Decl. at ¶ 3.) Plaintiff's admitted falsifications on his application materials would have, according to settled Bayer policy, been grounds for immediate termination.  Therefore, the Court finds that, on this independent basis, Bayer is entitled to summary judgment.

## CONCLUSION

For the foregoing reasons, Defendant Bayer's motion for summary judgment is GRANTED.  Judgment shall be entered in favor of Defendant and against Plaintiff.

**IT IS SO ORDERED.**

Dated: March 21, 2007

_____
JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE

**United States District Court**
For the Northern District of California

13